[Cite as *In re T.F.H.*, 2015-Ohio-291.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF: | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| THE ADOPTION OF | : | Hon. Sheila G. Farmer, J. |
| | : | Hon. John W. Wise, J. |
| T.F.H. and J.L.H. | : | |
| | : | Case No. 2014 AP 10 0040 |
| | : | |
| | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Court of Common Pleas, Probate Division, Case Nos. 14AD02914 and 14AD02915

JUDGMENT:      Affirmed

DATE OF JUDGMENT:      January 26, 2015

APPEARANCES:

For Plaintiffs-Appellants

DAVID K. SCHAFFNER
132 Fair Avenue, NW
New Philadelphia, OH 44663

For Defendant-Appellee

MICHAEL C. JOHNSON
117 South Broadway
New Philadelphia, OH 44663

*Farmer, J.*

{¶1}   Cassandra Grove and appellee, Ronald Hampton, Jr., are the parents of two children, J.L.H. born October 8, 2003 and T.F.H. born April 28, 2005.   Following dependency/neglect cases in 2005 (Case Nos. 2004JN00268 and 2005JN00317), the juvenile court placed the children with appellee's mother and stepfather, Toni and James Hafer, appellants herein.   Immediately thereafter, appellants returned the children to their parents without a court order to do so.

{¶2}   In early 2011, Ms. Grove and appellee separated and the children were returned to appellants.

{¶3}   On March 14, 2014, appellee filed a complaint for visitation (Case No. 2014VI00064).  On April 10, 2014, appellants filed petitions for adoption, the underlying cases herein.   Appellee contested the adoptions.   A hearing was held on August 22, 2014.  By judgment entry filed September 10, 2014, the trial court determined appellee's consent for the adoptions was necessary, and dismissed the petitions.

{¶4}   Appellants filed an appeal and this matter is now before this court for consideration.  Assignment of error is as follows:

I

{¶5}   "THE COURT ERRED IN CONCLUDING THAT THE CONSENT OF BIOLOGICAL PARENT RONALD HAMPTON, JR. WAS NECESSARY WHEN HE FAILED WITHOUT JUSTIFIABLE CAUSE TO PROVIDE MORE THAN *DE MINIMUS* CONTACT WITH THE CHILDREN FOR A PERIOD OF ONE YEAR IMMEDIATELY PRECEDING THE FILING OF THE ADOPTION PETITION."

I

{¶6}    Appellants claim the trial court erred in finding appellee's consent for the adoptions was necessary because there was overwhelming evidence of his failure to communicate or even make a significant attempt to communicate with his children for the one year period preceding the filing of the petitions.  We disagree.

{¶7}    In *In re Adoption of Holcomb,* 18 Ohio St. 3d 361 (1985), the Supreme Court of Ohio held the following at syllabus:

1. R.C. 3107.07(A) authorizes the adoption of a minor child without the consent of a parent who has failed without justifiable cause to communicate with that child for a period of at least one year immediately preceding the filing of the adoption petition.

2. Pursuant to the explicit language of R.C. 3107.07(A), failure by a parent to communicate with his or her child is sufficient to authorize adoption without that parent's consent only if there is a complete absence of communication for the statutorily defined one-year period.

3. Significant interference by a custodial parent with communication between the non-custodial parent and the child, or significant discouragement of such communication, is required to establish justifiable cause for the non-custodial parent's failure to communicate with the child. The question of whether justifiable cause exists in a particular case is a factual determination for the probate court and will not be disturbed upon

appeal unless such determination is unsupported by clear and convincing evidence.

4. The party petitioning for adoption has the burden of proving, by clear and convincing evidence, that the parent failed to communicate with the child during the requisite one-year period and that there was no justifiable cause for the failure of communication.***

{¶8} Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford,* 161 Ohio St. 469 (1954), paragraph three of the syllabus. We note the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison,* 49 Ohio St.3d 182 (1990). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 1997-Ohio-260.

{¶9} In its judgment entry filed September 10, 2014, the trial court considered the facts and stated the following:

Mr. Hampton is the son of Toni Hafer and the stepson of James Hafer. The relationship between these parties is very acrimonious. The original basis for this was not clearly presented through the evidence, but does appear to be centered originally around the neglect of the children.

There is no court order which specifically prevents Mr. Hampton from seeing or communicating with his children. He alleges that since 2011, he has been contacting the Hafers and trying to arrange to visit [J.] and [T.]. He further alleges that the Hafers have repeatedly told him that he could not see them and that any gifts, letters or cards that he might send would not be given to the children and would be destroyed.

In the year preceding the filing of this adoption petition, Mr. Hampton alleges that he called his mother on March 20, 25, and 31, 2013 in an attempt to arrange visitation with his children. His phone records verify that these calls were made.

The actual content of his calls to his mother are in dispute. Mr. Hampton alleges that he simply continued to ask to see his children. Mr. and Mrs. Hafer allege that the calls from Mr. Hampton were of a harassing nature, filled with insults and vulgarities directed at the Hafers.

The Court is sure that the content of these calls was somewhere in between both extremes. The Court is also sure that both Mrs. Hafer and her son behaved very immaturely and both engaged in belligerent behavior directed toward each other with such behavior having very little to do with visitation. It is clear that in whatever fashion they communicated, Mr. Hampton continued to ask to see his children and Mrs. Hafer would not let him do so.

{¶10} The acrimony pointed out by the trial court was intense. The mother of the children testified she told appellee that after the children were taken back into custody by appellants in 2011, Mrs. Hafer told her "anything sent to their home [gifts], would be thrown in the trash." T. at 114. This testimony gives some credence to the lack of a relationship between appellee and appellants.

{¶11} Appellee testified he called appellants' residence several times and his mother told him "don't ever call me again, and hung up," and also told him he was dead to her. T. at 78-80, 83-84, 104, 105. Appellee presented telephone records of several calls he made to appellants in 2013. Respondent's Exhibits 1- 6. Appellee's live-in girlfriend, Mandy Harbold, testified to being present during some of the calls. T. at 67, 69, 72. Appellee never went to the residence in fear he would be arrested. T. at 79, 108.

{¶12} Appellants agree appellee called the residence several times, but testified when he called, he was accusatory and hateful. T. at 10, 40.

{¶13} It is noteworthy that appellants did not file their petitions for adoption until after appellee had filed for visitation. The record illustrates the parties did not seek court intervention when appellants returned the children to the parents in 2005 (in violation of a court order) and when the parents returned the children to appellants in 2011 until the request for visitation was made three years later in 2014. T. at 4-5, 47, 78, 85.

{¶14} We concur with the trial court's analysis that appellants, specifically Mrs. Hafer, hindered the visitation that appellee was entitled to and also created a hostile

environment for him to seek visitation.  Appellee attempted contact, but was thwarted by his own mother.

{¶15}  Upon review, we find sufficient clear and convincing evidence to support the trial court's decision on justifiable cause and that appellee's consent to the adoptions was necessary.

{¶16}  The sole assignment of error is denied.

{¶17}  The judgment of the Court of Common Pleas of Tuscarawas County, Ohio, Probate Division is hereby affirmed.

By Farmer, J.

Hoffman, P.J. and

Wise, J. concur.


SGF/sg 109